■ DONALD PERDUYN, Appellant, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent.—Order and judgment (one paper), Supreme Court, New York County (David H. Edwards, Jr., J.), entered November 27, 1991, which, in a proceeding to vacate an arbitration award, granted respondent's cross-motion to dismiss the petition for lack of standing, unanimously affirmed, without costs.

Collective bargaining agreements typically give control over grievances and an associated arbitration process to the individual grievant's union, a circumstance that generally leaves the grievant without standing to challenge an unfavorable arbitration award (see, e.g., Donato v American Locomotive Co., 283 App Div 410, 417). Inasmuch as the particular collective bargaining agreement at issue herein gives petitioner no rights distinguishing it from the typical collective bargaining agreement (see, e.g., Matter of Diaz v Pilgrim State Psychiatric Ctr., 62 NY2d 693), the proceeding was properly dismissed. Concur—Rosenberger, J. P., Ellerin, Kupferman and Ross, JJ.

Asch, J., concurs in a separate memorandum as follows: In the case before us, after a hearing in which petitioner was represented by his Union pursuant to a collective bargaining

agreement, he was found guilty of serious improper conduct on the job, with significant consequences for him. The Supreme Court dismissed the CPLR article 75 proceeding in which he sought to vacate the arbitration award.

Language in the collective bargaining agreement provided that an aggrieved worker was entitled to a hearing before a panel of three arbitrators, under a longstanding written agreement between respondent and the Union. Nevertheless, this provision was waived by the Union and the hearing conducted before a single arbitrator. At the hearing, the Plant Manager, who, in effect, was the complainant, participated as a company representative. Over the Union attorney's objection, extensive evidence relating to a campaign of terror launched by the "Black Hand" was admitted to illustrate the atmosphere of fear which prevailed at the plant during the period of the misconduct attributed to petitioner. It was not, however, alleged that petitioner was himself the "Black Hand". At the conclusion of the hearing, the arbitrator ruled in favor of Consolidated Edison Company of New York, Inc., against the petitioner.

Petitioner then individually commenced the instant article 75 proceeding. The trial court, in a short memorandum, found that petitioner, as member of the Union, had no standing to assert an individual claim in arbitration against the employer, and that petitioner's sole remedy was a plenary action against the Union for breach of its duty of fair representation *(Vaca v Sipes,* 386 US 171). So while collective bargaining has enhanced the potency of the worker in negotiating the conditions of his employment, he has been compelled to yield to the union some of his personal freedom.

The emergence of the pristine law of contract marked the triumph of the individual's right to self determination over feudal status. It was a legal instrument which made it possible to develop an industrial system. Certainly, it provided a major underpinning for a society which sought to enable all persons to negotiate out their own destinies.

Modern conditions of life, both economic and otherwise have compelled a reconsideration of the traditional doctrines of contract law. They point up the many ambivalances between the principles of contract enunciated in the law school casebooks and learned treatises with present day needs resulting from changes in industry, urbanization, expansion of governmental involvement in all aspects of life, increased instability of our social, economic and political institutions, as well as the

replacement of individual by collective bargaining in America's industrial system *(see,* Friedman, Law in a Changing Society chs 4, 8 [1971]).

The increased dominating power of industrial organizations, of union establishment, of the monied foundations, of governmental entities, and of institutions which dictate the conditions of American life raises questions about the relationship between these groups, the law and the rights of individuals. The continuance of the restrictions on the ability of the courts to check abuse of power by associations with respect to their members should be reconsidered.