**Dennis HELLUMS and Michael Keener, Appellants,**

v.

**QUAKER OATS COMPANY and Local 125, Retail, Wholesale and Department Store Union, Affiliated with the AFL–CIO, Appellees.**

No. 84–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1984.

Decided April 19, 1985.

Rehearing Denied May 30, 1985.

Lawrence Pelofsky, Kansas City, Mo., for appellants.

Thomas H. Marshall, Kansas City, Kan., for the Union.

Michael T. Welch, Chicago, Ill., for Quaker Oats Co.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

On August 22, 1978, Dennis Hellums, Michael Keener, and Wayman Griggs were working overtime at the Quaker Oats plant in St. Joseph, Missouri, when a fight broke out between Hellums and Keener on one side and Griggs on the other. No one else saw the fight begin. The three employees gave conflicting versions of the events leading up to the fight; Griggs claimed that Hellums and Keener had started the fight, while Hellums and Keener claimed that Griggs had started it. Uncontested, however, is the fact that after the original hostilities had ceased and five to ten minutes had gone by, Hellums and Keener continued to try to attack Griggs, at one point chasing him with heavy iron bars. Quaker Oats fired Hellums, Keener, and Griggs. Local 125 of the Retail, Wholesale and Department Store Union (Local 125) filed grievances on behalf of all three employees.

Local 125 appointed separate union representatives for each grievant through the first three steps of the contractual grievance procedure. At each step, Local 125 argued for reinstatement of Hellums, Keener, and Griggs. The grievances were denied at each level by Quaker Oats. Local 125 thereafter requested that all three grievances be taken to arbitration.

Pursuant to the collective bargaining agreement between Quaker Oats and Local 125, an arbitrator was selected to hear the grievances of the three employees. The union also hired one attorney to represent Hellums, Keener, and Griggs. None of the grievants objected to this procedure. There apparently was some confusion as to the number of hearings that were to be held. The union attorney believed that Griggs's hearing was scheduled to take place on April 26, 1979, with a second hearing for both Hellums and Keener the next day. Quaker Oats apparently believed that only one hearing would be held.

At the hearing on April 26, a total of six Quaker Oats employees appeared before the arbitrator. A security guard, an elevator manager, and the Employee and Com-

munity Relations Manager testified first. Griggs then told the arbitrator his version of the incident. Hellums and Keener, who had not been present while the first four employees testified, thereafter were called by Quaker Oats to present their side of the story. The union attorney advised Hellums and Keener that they did not have to testify and could wait for a separate hearing the next day. He also told them, however, that if they wanted to save everyone's time, they might as well go ahead and testify. They did. Hellums and Keener were further told that though they had testified, they could have a second hearing if they wished. Both replied that they had told their story in full and that it would not be altered if they told it again the next day.

Two pieces of information did not come out during the arbitration hearing. First, Griggs testified that Hellums had disliked him for a number of years, though Griggs had made a contrary statement to the union attorney before the hearing. The attorney did not use the prior statement to impeach Griggs. Second, the union attorney did not introduce any evidence of two previous altercations at Quaker Oats involving Griggs; apparently, Local 125 did not know of either altercation.

The arbitrator sustained Griggs's grievance and denied the grievances of Hellums and Keener. Hellums and Keener sued Local 125 for breach of its duty of fair representation. The District Court[1] held that even if Local 125 had breached its duty of fair representation, the breach had in no way prejudiced Hellums or Keener.[2] We do not reach the question of prejudice because we do not believe, though the question is a close one, that Local 125

breached its duty of fair representation to Hellums or Keener.

■ The doctrine of fair representation provides that a union, which has "statutory authority to represent all members of a designated unit [also has] a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). There is no allegation of improper motivation on the part of Local 125 in the present case. However, even "[w]ithout any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation." *Griffin v. International Union, U.A.W.*, 469 F.2d 181, 183 (4th Cir. 1972). Arbitrary conduct may include the handling of a grievance in a perfunctory manner. *Vaca v. Sipes*, 386 U.S. at 191, 87 S.Ct. at 917; *Ethier v. United States Postal Service*, 590 F.2d 733, 735 (8th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

Hellums and Keener do not contend, and the record does not support an inference, that Local 125 did not actively back their efforts to be reinstated. Local 125 pursued the grievances of all three employees through every step of the grievance procedure. Each grievant was afforded separate representation by a steward through the first three steps of the grievance procedure and those representatives argued at each step for the reinstatement of the

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. The District Court reached this decision largely on the basis of testimony by the arbitrator at the District Court hearing. The arbitrator testified that he believed Griggs's story and that his credibility determination would have been unaffected by evidence of Griggs's past conduct, because it was the arbitrator's practice not to consider such evidence. The District Court thus concluded that Hellums and Keener had not

been prejudiced by the failure of union counsel to introduce this evidence at the arbitration hearing.

We are not convinced of the utility or the fairness of permitting an arbitrator to speculate before the District Court as to what his ruling would have been had the evidence been somewhat different, even if the arbitrator's speculation is based, as it seems to have been in this case, on a practice the arbitrator usually follows.

grievants. Rather, the essence of Hellums's and Keener's complaint is that Local 125 breached its duty of fair representation by not specifically attacking Griggs's credibility at the arbitration hearing.

◾ It is plain that the situation confronted by Local 125 in the present case involves conflicting claims by different union members: to the degree the stories told by Hellums and Keener differed from the story told by Griggs, the credibility of two members of Local 125 was pitted directly against the credibility of another member of Local 125. Local 125 could not call the credibility of Griggs into question without benefitting Hellums and Keener at Griggs's expense, and conversely, could not attack the credibility of Hellums or Keener without benefitting Griggs at their expense. Local 125 could have made its own credibility judgment as between Hellums and Keener on the one hand, and Griggs on the other, had it been persuaded of the credibility of one of the parties to the dispute, and it would have been entitled to take a position favoring that party in the dispute. *Smith v. Hussmann Refrigerator Company,* 619 F.2d 1229, 1237 & n. 9 (8th Cir.) (en banc), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). But, in the alternative, Local 125 was entitled to choose simply to submit each of the grievances in a neutral fashion, permit the parties to present their own stories at the arbitration hearing, and leave it to the arbitrator to make the necessary credibility determinations. *See id.* at 1239; *see also Buchholtz v. Swift & Company,* 609 F.2d 317, 327 (8th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). Indeed, given that there were no witnesses to the altercation other than the participants themselves, this course of conduct may have been the better choice.[3]

◾ This Circuit has expressed the view that "[u]pon a claim of substandard treatment, the union should be required to come forward with evidence to show why it followed the course of representation that it did." *Smith v. Hussmann Refrigerator Company,* 619 F.2d at 1239 (quoting Bryson, *A Matter of Wooden Logic: Labor Law Preemption and Individual Rights,* 51 Tex.L.Rev. 1037, 1102 (1973)). If the course of representation is not the result of hostility, or otherwise unreasonable and arbitrary, it does not constitute a breach of the duty of fair representation. *Id.*

◾ It has been shown that Local 125 was completely neutral as to the credibility of Hellums, Keener, and Griggs, though it did not (as it should have done) apprise them of its intention to be neutral. Local 125 did investigate the incident and took each grievance through to arbitration. The union attorney interviewed Hellums, Keener, and Griggs a number of days before the hearing and knew they had different stories as to how the fight started. While the attorney seems to have been somewhat confused as to his role as far as representing the interests of all three employees, his confusion seems to have stemmed more from his surprise that Hellums and Keener were to testify at the same hearing as Griggs, than from any doubt that he was to maintain a neutral role as far as the credibility of the three employees was concerned. He did not put any grievant's credibility at issue, but did not prevent any grievant from challenging the credibility of another grievant. Each grievant was permitted to tell his story; Hellums and Keener indicated that they were completely sat-

---

**3.** Holding separate hearings with separate union representatives before two separate arbitrators would not seem appreciably to help matters when the issue is the credibility of grieving employees with inconsistent versions of the facts. Though separate hearings would permit a union to attack the credibility of the non-grieving employee at each hearing, such a procedure would place the employee whose grievance had been heard second at a significant disadvantage. At the first hearing, the union would attack the credibility of the non-grieving employee with information it had discovered in the course of its investigation. This information would then, no doubt, be used by the company in the second hearing when the non-grieving employee became the grievant. Even with two hearings, a union would be forced to make a choice benefitting one employee at the expense of another.

isfied with the opportunity they were given to tell their stories.

■ Hellums and Keener attempt to show that Local 125's choice of neutrality was arbitrary by highlighting the District Court's finding that Local 125, by reasonable investigation, should have known of two prior altercations involving Griggs and should also have known of Griggs's reputation as an aggressive and argumentative person. Plaintiffs' argument seems to be that Local 125 could not reasonably have chosen to be neutral given knowledge of Griggs's reputation and prior conduct. We do not take issue with the finding of the District Court that Local 125 was negligent in its investigation. Mere negligence, however, does not rise to the level of a breach of the duty of fair representation. *See Higdon v. United Steelworkers of America,* 706 F.2d 1561, 1562 (11th Cir.1983); *cf. Ethier v. United States Postal Service,* 590 F.2d at 736. A union's choice of a course of conduct cannot be said to be arbitrary or perfunctory in violation of the duty of fair representation, though the choice is arrived at negligently, as long as it is made in good faith and without hostility to any of the grievants. And, as we noted earlier, there is no allegation that Local 125 followed its course of action in this case as a result of hostility or bad faith. In short, we believe that the aid given by Local 125 to Hellums and Keener, while less than perfect, nevertheless passes the test of fair representation.

The judgment of the District Court is affirmed.