**Joe BAKER, Appellant,**

v.

**CONSTRUCTION AND GENERAL LABORERS, LOCAL NO. 264, AFL–CIO; Fred Reagan; and Columbus Sumpter, Appellees.**

**No. 86–2373.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided July 1, 1987.

---

Dennis Owens, Kansas City, Mo., for appellant.

Charles A. Werner, St. Louis, Mo., for appellees.

Before ROSS, ARNOLD and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

Joe Baker brought this suit against his union, Construction and General Laborers Local No. 264, AFL–CIO, and two union officials, Fred Reagan and Columbus Sumpter. Following a bench trial, the District Court[1] entered judgment for the defendants on all four counts of Baker's complaint. On appeal, Baker argues that the District Court erred in rejecting his claim that the union's procedure for referring members for construction jobs violated the duty of fair representation. We affirm.

## I.

Local 264 is an unincorporated labor organization with its principal offices in Kansas City, Missouri. Baker, a fifty-year-old unskilled laborer, has been a member of Local 264 since 1960. At all relevant times, appellee Fred Reagan served as Business Manager of the union, and appellee Columbus Sumpter was a Field Representative.

Local 264 and two other local unions affiliated with the Laborers' International Union of North America, AFL–CIO, have been parties to a series of collective-bargaining agreements with the Builders' Association of Missouri, an organization of some 300 contractors in the Greater Kansas City area. All of the relevant joint agreements contain the following declaration of principles:

> That the workmen are at liberty to work for whomsoever they see fit, but they shall demand and receive the wage agreed upon as hereinafter set out.
>
> That the employers are at liberty to employ and discharge whomsoever they see fit, through the foreman, or direct if there is no foreman in charge.

In addition, Article IX of the agreements contains the following language:

> The parties agree that there will be no employee referral system. This is not meant to preclude the identification of employees when filling requests for job applicants.

The agreements thus permit the union to utilize an identification-slip system for unemployed members. The agreements do not, however, provide for a hiring hall or a referral system, nor is there any provision in the union's by-laws or constitution cover-

---

**1.** The Hon. Ross T. Roberts, late a United States District Judge for the Western District of Missouri.

ing such matters. Members of Local 264 have the right to contact employers directly for work, and contractors have the right to contact union members directly for employment. Contractors also have the right to hire, discharge, lay off, recall, and transfer workers.

If a contractor needs additional laborers and has not hired them directly, it can contact the union and request that a certain number of laborers be sent to the job site. On some occasions, a contractor may ask for a specific laborer by name. Union officials then attempt to notify the named individual that the contractor has requested him for a job. If the contractor does not request specific laborers by name, its request for workers, sometimes including a description of the job to be performed, is communicated by a union officer to unemployed members who are present in the waiting room at the union hall. The waiting room is a large room in the back of the union hall where unemployed members can wait for calls from contractors who are looking for laborers. Such calls may come in throughout the day. If no members are present in the waiting room, or no member in the waiting room is interested in the contractor's request, union officials will attempt to locate an unemployed member who would be interested in the job. Local 264 members who are selected to fill a request by a contractor are given an identification slip which includes the name of the contractor, the name of the laborer, and a date. The laborer then reports to the job site with the identification slip.

Between February 1981 and June 1981, the union utilized an out-of-work list procedure[2] for issuing identification slips. The out-of-work list was discontinued on June 5, 1981, by a majority vote of the members present at the union's monthly meeting. Both before and after that brief period in 1981, the method used to issue identification slips was as follows: when a contractor called in a general request, a union official would stand at the head of the stairs and announce that the contractor needed a specific number of laborers. Those unemployed union members in the waiting room who were interested would then run forward to the head of the stairs, and were awarded identification slips on a first-come, first-served basis.

Baker declined to participate in the rush forward, apparently because he believed any such effort would be fruitless and undignified. Therefore, even though he claims to have been present in the waiting room a substantial portion of the time, he received no identification slips from the union and remained unemployed from July 18, 1981 until May 4, 1984.

Baker filed his initial complaint in June 1981, alleging that the defendants had violated their duty of fair representation by discriminating against him in referrals for employment. In December 1984, he filed an amended four-count complaint, alleging (1) breach of the duty of fair representation; (2) civil conspiracy; (3) violation of 29 U.S.C. § 411 in disciplining him without following proper procedures; and (4) breach of the collective-bargaining agreement. The case was eventually tried to the court in August 1985. In October 1986, the District Court entered judgment in favor of defendants on all four counts. This appeal followed.

## II.

The sole issue on appeal is whether the District Court erred in rejecting Baker's claim that the union's actions in connection with the identification-slip procedure amounted to breach of the duty of fair representation.

The District Court stated that "[i]n order to establish a breach of the duty of fair representation, [Baker] must show that the Union acted in a manner that is perfunctory, arbitrary, discriminatory, or in bad faith," citing *International Brotherhood of Electrical Workers v. Foust*, 442 U.S.

2. The out-of-work list procedure implemented by the union during that period operated as follows: unemployed members were given numbers and placed on a list in numerical order. Thereafter, contractor requests were given to those individuals whose names appeared at the top of the list. If an individual was hired by a contractor and employed for more than three days and then became unemployed again, or if that individual's name was called three times without reply, his name would be placed at the bottom of the list.

42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979); *Vaca v. Sipes,* 386 U.S. 171, 190–91, 87 S.Ct. 903, 916–917, 17 L.Ed.2d 842 (1967); *Brown v. Trans World Airlines, Inc.,* 746 F.2d 1354, 1357 (8th Cir.1984); and *Curtis v. United Transportation Union,* 700 F.2d 457, 458 (8th Cir.1983). The Court acknowledged that "the spectacle of Union members rushing forward, each seeking to elbow his way to the forefront of the line in order to be awarded an identification slip, presents a picture of a procedure that is both demeaning and undignified[.]" The Court nevertheless concluded that Baker had failed to prove that the procedure was arbitrary, discriminatory, or motivated by bad faith, either inherently or as it was applied to Baker. The Court observed that nothing in the joint agreement or the union's constitution suggested that such a procedure, by itself, would constitute a breach of the union's duty of fair representation, and that a majority of the union membership apparently preferred the first-come, first-served method over such methods as the out-of-work list, which was voted out after less than six months. Nor, according to the District Court, did Baker show that he was singled out in any way by the process, or that the union's failure to give him identification slips was motivated by bad faith. Rather, Baker's testimony indicated that he removed himself from consideration by refusing to participate in the rush forward when union officials called for laborers.

Baker argues that the District Court misapplied the relevant legal standard in rejecting his unfair representation claim. He maintains that to establish breach of the duty of fair representation, he need prove only one of the four distinct elements of the standard; that is, he need show only that the union's activity was either arbitrary, discriminatory, perfunctory, or in bad faith. Baker explains that his position is not that the union's actions were motivated by bad faith, or that its actions evidenced "hostile" discrimination. Rather, he argues that the identification-slip procedure is perfunctory and arbitrary, and has the effect of discriminating against members who are not so fast or so large as other members.

But even viewing each of these elements as " 'a distinct and separate obligation, the breach of which may constitute the basis for civil action,' " *Smith v. Hussmann Refrigerator Co.,* 619 F.2d 1229, 1237 (8th Cir.) (en banc), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980) (quoting *Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* 469 F.2d 181, 183 (4th Cir.1972)), we must agree with the District Court that the union's activity did not amount to a breach of the duty of fair representation. The "perfunctory" conduct standard applies only to cases which involve the union's handling of employee grievances. See *Chavez v. United Food & Commercial Workers International Union, AFL–CIO–CLC,* 779 F.2d 1353, 1357 (8th Cir.1985). There is no evidence that Baker filed a grievance in the present case. Nor are Baker's general allegations regarding the "discriminatory effect" of the identification-slip procedure sufficient to support an unfair-representation claim, absent any showing of bad faith or that he was singled out in any way for unfavorable treatment. See, *e.g., Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853, 859 (8th Cir.1975).

Baker's assertions concerning the arbitrary nature of the challenged procedure present a somewhat closer question. As this Court has noted, "even '[w]ithout any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation.' " *Hellums v. Quaker Oats Co.,* 760 F.2d 202, 204 (8th Cir.1985) (quoting *Griffin,* 469 F.2d at 183). Baker submits that issuing job slips to the first union members to scramble up a flight of stairs is hardly an objective, rational method for distributing jobs.

As the District Court noted, the method utilized by the union is perhaps not the best solution for allocating jobs among unemployed members, but it nevertheless does not violate federal law. The "first-come, first-served" procedure is indeed un-

dignified, the kind of thing that might happen in a summer camp, but the law does not require that the manners of the drawing room be observed in the union hall. In fulfilling the duty of fair representation, the union must balance the interests of individual members against the interests of all members of the bargaining unit. *Cf. Hussmann Refrigeration*, 619 F.2d at 1235–36. In this instance, the challenged procedure was approved by a majority vote of the union membership, and those members who, like Baker, find the procedure objectionable are free to contact employers directly to obtain work. In the circumstances, we cannot say that the procedure for issuing identification slips is so unreasonable and arbitrary that it violates the duty of fair representation.

Accordingly, the judgment of the District Court is affirmed.