914 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin L. HAYES, Plaintiff-Appellant,
v.
BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL
UNION OF AMERICA, LOCAL 213 AFL-CIO, and The
Ralston-Purina Company, Bremner
Division, Defendants-Appellees.
 No. 89-6349.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and Joiner, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In this case, appellant unsuccessfully brought a "hybrid" section 301 action under the Labor Management Relations Act. 29 U.S.C. Sec. 185(a) (1978). Following a bench trial, the district court found the following facts. Marvin L. Hayes (Hayes) was employed by the Bremner Division of Ralston Purina Company (Ralston) beginning in 1975. He served as union steward for a period and was, at the time of the events at issue, on the collective bargaining agreement negotiation team.
 
 
 2
 In November of 1984, Hayes "bumped into"[1] a position in sanitation control. He was informed that at some point within his fifteen-day training period, he would have to take a state sanitation-control licensing examination. The examination was administered in Frankfort, Kentucky, an hour's drive from the company. On November 29, Hayes was informed that he would be taking the test the next day. As Hayes's own car did not have the $50,000 in liability insurance coverage required for automobiles driven while on company business, he accompanied his foreman to a rental car agency to rent an automobile, at company expense. Hayes could show no license, so the automobile was rented in the foreman's name.
 
 
 3
 Hayes reported to the plant at 5:00 the next morning. At 7:30 a.m., when Hayes refused his consent to being driven to the test site by his foreman, a meeting was hastily convened in the offices of Ralston's personnel manager, Keith Locke. In addition to Locke, the meeting was attended by the union's business manager, Ricky Simpson, and a union steward, Diane Johnson. Hayes's relations with the union for some time prior to November 29 had been troubled. At the meeting, there were heated exchanges between Hayes and both Locke and Simpson. It was decided that Hayes would be allowed to drive himself to the test, which was scheduled to begin at 9:00 a.m.
 
 
 4
 Just before 8:00 a.m., Hayes drove out of the plant, followed by Simpson. The two cars stopped just beyond a guard shack in the drive leading to the plant, and Hayes got out and walked back to speak with Simpson. The district court found that Hayes struck the first blow in the physical altercation which subsequently took place.
 
 
 5
 Although Hayes testified at trial that Simpson began the fight, two employees of an independent sanitation contractor who witnessed the altercation both testified that they saw the beginning of the fight, and that Hayes initiated it. The district court noted that Hayes's credibility was diminished by the fact that his testimony during the subsequent informal investigative hearings differed from his testimony at trial. The district court's finding that Hayes initiated the fight was not clearly erroneous.
 
 
 6
 Hayes returned to the plant, where he had words with his foreman, and was sent home. Locke began an investigation of the morning's events, and placed Hayes on suspension later that day. Simpson had no further dealings with Hayes in his capacity as union business manager, although he gave a signed statement to Locke stating that Hayes initiated the fight, and later pursued civil and criminal actions.
 
 
 7
 Hayes attended an investigative meeting called by Ralston on December 4, 1984. Locke presided at the meeting, which was also attended by Johnson and another union steward. Johnson acted as Hayes's union representative at the meeting. On December 7, Locke fired Hayes. On December 12, Hayes filed a grievance.
 
 
 8
 The Union requested and received from Ralston an extension of time in which to investigate these events and decide whether to pursue the grievance. The investigation was conducted by the president of the union local, John Baker. Baker held a hearing on January 4, 1985, at which Hayes was represented by Johnson. Hayes claimed ignorance of posted company rules, which prohibited fighting with fellow employees on company property, as well as "engaging in violent conduct against a fellow employee."
 
 
 9
 At the conclusion of his investigation, Baker informed Hayes that the union would not pursue the grievance because Hayes appeared to be the aggressor, and because Baker's research into arbitral decisions indicated that discharges under these circumstances were always upheld. Baker invited Hayes to pursue the issue at the executive meeting of the International Union (International) on January 15, 1985, which he did. The Union requested an opinion from its counsel on whether it should pursue the grievance. The opinion advised against doing so, and the Union affirmed Baker's decision.
 
 I.
 
 10
 A "hybrid" section 301 claim involves "a complaint of breach of a collective bargaining agreement arising from plaintiff's discharge from the employment of the defendant employer without just cause, and of the duty of fair representation by plaintiff's union in processing his grievance." White v. Anchor Motor Freight, 899 F.2d 555, 562 n. 9 (6th Cir.1990). The measure of the employer's conduct is the collective bargaining agreement. The duty of fair representation requires the union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Breininger v. Sheet Metal Workers Int'l Ass'n, 110 S.Ct. 424, 429 (1989) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)).
 
 
 11
 Plaintiff argues that the district court erred in finding that Ralston had "jurisdiction" to discipline Hayes, refusing to disqualify counsel for the Union for conflict of interest, dismissing Hayes's state law claims, and concluding that Ralston did not breach the collective bargaining contract and the union did not breach its duty of fair representation.[2]
 
 II.
 
 12
 Hayes asserts that Ralston did not have "jurisdiction" over him at the time of the events for which he was discharged. Hayes was discharged pursuant to the company rule prohibiting fighting on company property and violent behavior toward fellow employees. The management-rights clause of the collective bargaining agreement provides that the company may enact reasonable rules governing employee conduct. Hayes's two arguments as to why Ralston did not have the authority to discipline him are, first, that Simpson was not a "fellow employee," and second, that he did not know he was on company property.
 
 
 13
 Although Simpson, as the elected union business agent, was on leave of absence from the company at the time of the events in question, he remained an employee, with unaltered seniority. As to the "jurisdiction" question, the district court properly stated that it was unnecessary to reach the question of whether Hayes's actions took place on company property, since the rules prohibited "engaging in violent conduct against a fellow employee." The company did not discharge Hayes without just cause.
 
 III.
 
 14
 Hayes appeals the district court's denial of his motion to disqualify counsel for the Union for conflict of interest, the assertion being that the Union counsel's prior activities on Hayes's behalf conflict with their representation of the union, against Hayes, here. Plaintiff cites Philadelphia Housing Authority v. American Radiator & Sanitary Corp., 294 F.Supp. 1148 (E.D.Pa.1969), for the proposition that counsel to an unincorporated association represents each member individually for purposes of a conflict analysis. However, defendants correctly point out that counsel for a union are excepted from this general rule. See, e.g., Griesemer v. Retail Store Employees Union, 482 F.Supp. 312 (E.D.Pa.1980); Adamo v. Hotel Workers, 655 F.Supp. 1129, 1129 (E.D.Mich.1987).
 
 IV.
 
 15
 Plaintiff argues that the Union breached its duty of fair representation because Simpson's conduct must be viewed as Union conduct, therefore the union acted "hostilely" toward Hayes. Hayes cites no law supporting this contention. In Breininger, the Supreme Court addressed similar facts:
 
 
 16
 In the instant case, petitioner alleged only that the union business manager and business agent failed to refer him for employment because he supported one of their political rivals. He did not allege acts by the union amounting to "discipline" within the meaning of the statute. According to his complaint, he was the victim of the personal vendettas of two union officers. The opprobrium of the union as an entity, however, was not visited upon petitioner.
 
 
 17
 110 S.Ct. at 440. It is clear from this passage that conduct of a union official does not have to be viewed as conduct of the union. Moreover, if Simpson's conduct were attributed to the union, it would not alter our conclusions. The facts found by the district court indicate that Simpson certainly acted within his rights, including his statement to Ralston that if they fired him for the incident, he would bring suit against the company. He did not demand that Hayes be punished, as plaintiff asserts, but only that he himself not be punished.
 
 
 18
 The union is not bound to defend its members; the union may make a good-faith determination that discipline is entirely deserved. Vaca v. Sipes, 386 U.S. 171, 195 (1967); Hellums v. Quaker Oats Co., 760 F.2d 202 (8th Cir.1985). There is no evidence that the union acted arbitrarily, discriminatorily, or in bad faith. The president of the local union personally investigated the events in question, and even requested and received an extension of time from Ralston in which to make a considered decision. In addition, the International went so far as to request a legal opinion on its duty in these circumstances, before making its decision. The Union duly weighed the merits of Hayes's grievance in making its decision.
 
 V.
 
 19
 Hayes complains of the district court's dismissal of pendent state claims. The complaint alleged that the Union and Ralston were liable for "negligent interference with Hayes's advantageous business relationship" and conspiracy, that "the acts and conduct of the union and the company ... were in wanton and reckless disregard of Hayes's rights and constitute gross negligence," and that the conspiracy caused Hayes emotional distress. The district court found no basis for the first three of the above claims on the facts. As to the fourth, the district court noted that Kentucky law requires "extreme and outrageous" conduct, and then also found that this claim had no basis in fact.
 
 
 20
 Defendants correctly point out that Hayes's state claims are preempted. In Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988), the Supreme Court held that although a state law claim is not necessarily preempted simply because it might involve attention to the same factual considerations as the contractual determination, the state law claim must be capable of resolution without interpreting the collective bargaining agreement. None of the state law claims stated by Hayes pass this test, as all require inquiry into the propriety of the company's action in discharging Hayes.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Having lost his former position to a worker with more seniority, Hayes chose to take this position, displacing a worker with less seniority
 
 
 [2]
 A number of arguments presented by appellant were predicated upon facts differing from those found by the district court. As the findings of the district court are not clearly erroneous, we do not address those arguments