Robert C. SCHMIDT, Plaintiff–
Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
949, Defendant–Appellee.

No. 91–3457.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1992.

Decided Dec. 1, 1992.

James Perunovich, Minneapolis, Minn.,
argued (David A. Singer, on the brief), for
plaintiff-appellant.

James T. Hansing, Minneapolis, Minn.,
argued, for defendant-appellee.

Before BOWMAN, LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

LOKEN, Circuit Judge.

Robert Schmidt appeals the district court's [1] grant of summary judgment dismissing his claim that Local 949 of the International Brotherhood of Electrical Workers breached its duty of fair representation when it refused to arbitrate Schmidt's severance pay grievance. We affirm.

## I.

Schmidt was a member of Local 949 and a sixteen-year employee of Continental Telephone Company of Minnesota ("Contel") when a job-related knee injury disabled him in May 1988. Despite surgery and rehabilitation, Schmidt could not return to his position as a telephone lineman, and he filed a claim for workers' compensation benefits.

In February 1989, Contel assigned Schmidt to a full time light duty position at its warehouse in Lindstrom, Minnesota, near Schmidt's home. Two months later, Contel eliminated that job. Schmidt declined Contel's offer of a part time repair job in Lindstrom. Contel next offered a full time position in Mound, Minnesota, seventy miles from Lindstrom. Schmidt and his attorney, David Singer, rejected that offer "due to the travelling distance from [Schmidt's] home, and his doctor's medical restrictions."

In late June, Contel met with Schmidt and offered to create a new job for him at the Lindstrom facility that would allow him to work until he qualified for early retirement benefits. After the meeting, Contel

and Schmidt asked Local 949 to waive its right to have the new job posted for bidding under the collective bargaining agreement. Union business agent Robert Anderson testified at his deposition:

> This concept was presented to the membership ... and they said that if there was a vacancy, irrespective if it was for Mr. Schmidt or not, the agreement calls for it to be put on the bulletin board and bid by anyone, and Mr. Schmidt would run his chances of getting it. They would not step aside for a new position.

Contel then advised Schmidt that the company would not create the new position, citing among other reasons that it would be "contrary to the existing labor agreement." When Schmidt did not respond to Contel's renewed offer of the position in Mound, the company terminated him effective July 24, 1989.

On September 1, Singer complained to Contel that Schmidt had not received severance pay, citing Article 20 of the collective bargaining agreement.[2] Contel replied that Schmidt was not entitled to severance pay because "[w]e did have work for Bob, but Bob declined our offers," so "[w]e do not consider Bob having been laid off." Schmidt then asked the union for assistance. He testified that Local 949 officials LuVern Stern and Bob Anderson told him, "Well, what are you worried about, you're going to get enough settlement from workmen's comp."

Singer then wrote Anderson a letter detailing Schmidt's severance pay case and asking Anderson to invoke the grievance process. On September 19, Local 949 initiated a grievance challenging Contel's denial of severance pay as a breach of Article 20 of the collective bargaining agreement. According to Anderson, the union deemed

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The HONORABLE ROBERT G. RENNER, United States District Judge for the District of Minnesota, now a Senior District Judge.

2. "*Section 20.01.* Termination pay shall be computed on the basis set forth below ...

10 [years] and over    2 weeks for each year of service with a maximum of 40 weeks termination pay

\*   \*   \*   \*   \*

"*Section 20.03.* A termination payment shall not be made to an employee who is dismissed

the grievance meritless; it was initiated only because of "Mr. Schmidt's insistence that I try to get some money for him through this [grievance] procedure."

Contel denied the grievance, explaining that Schmidt was terminated for cause for purposes of § 20.03 because he was physically unable to perform his former lineman's duties and had refused the job in Mound. According to Schmidt, Anderson suggested that the two of them seek a $5,000 settlement, such as the union obtained for a similar grievance in 1985. When Schmidt reported this to Singer, Singer wrote Anderson stating that a $5,000 settlement would be inadequate and suggesting "that the union designate me as its authorized representative for all further proceedings." Instead, Local 949 refused to proceed to arbitration, effectively terminating the grievance proceeding.

Schmidt then filed this lawsuit, charging Local 949 with breach of its duty of fair representation in refusing to arbitrate his grievance, and seeking "not less than $33,000.00" in severance pay damages.[3] After substantial discovery, the district court granted the union's motion for summary judgment. Citing testimony by Stern, the union representative who negotiated the contract in 1967, that severance pay is only available when an employee is laid off, the court found it reasonable for the union to conclude that Schmidt's grievance lacked merit. By nevertheless filing the grievance, the union made "a good faith attempt to explore its settlement value." Summary judgment was appropriate because Schmidt had presented insufficient evidence of arbitrary, discriminatory, or bad faith conduct by the union in refusing to arbitrate a grievance it considered meritless. This appeal followed.

## II.

To recover severance pay damages from Local 949, Schmidt must prove

that Contel breached the collective bargaining agreement *and* that Local 949 breached its duty of fair representation in refusing to arbitrate the grievance. *See Teamsters Local 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). Under the federal labor laws, the union's duty of fair representation imposes a responsibility "akin to the duties owed by other fiduciaries to their beneficiaries." *Air Line Pilots Assoc. v. O'Neill*, —— U.S. ——, ——, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991). It obligates a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

Schmidt argues that Local 949 acted arbitrarily in refusing to press his grievance to arbitration. The Supreme Court recently defined the "arbitrary conduct" standard under *Vaca v. Sipes:* "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, —— U.S. at ——, 111 S.Ct. at 1130 (citation omitted). In its handling of grievances, a union may act adversely to a member of the bargaining unit "only on the basis of an informed, reasoned judgment regarding the merits of the claims in terms of the language of the collective bargaining agreement." *Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1237 (8th Cir.) (en banc), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). However, as the *O'Neill* standard recognizes, unions must be afforded considerable latitude in the exercise of their reasoned judgment.[4]

---

for cause, an employee who resigns or an employee on leave of absence other than sick leave."

**3.** Schmidt initially joined Contel as a defendant in the lawsuit. He later dismissed Contel with prejudice as part of a settlement of his separate claim for workers' compensation benefits.

**4.** Schmidt argues that Local 949 breached its duty because it gave only perfunctory consideration to the merits of his grievance, "without concern for his interests." Our prior cases create some doubt whether a union breaches its duty of fair representation by processing a grievance in a perfunctory but good faith manner. *Compare Smegal v. Gateway Foods of Minneapolis, Inc.*, 763 F.2d 354, 360 (8th Cir.1985) (union liable if it refused to arbitrate "without

In denying Schmidt's grievance, Contel construed the collective bargaining agreement as limiting severance pay to employees who are laid off; it reasoned that Schmidt was terminated "for cause" under § 20.03 because he was physically unable to perform his prior duties as a lineman. Attorney Singer argued that Schmidt was not terminated from the lineman's job, but rather from the light duty warehouse job he held for two months in early 1989—because Contel eliminated this position, Schmidt was laid off and entitled to severance pay. Thus, Local 949 was faced with two conflicting interpretations of the collective bargaining agreement, each of which was a plausible construction of the contract provisions.

The district court expressly found that the union adopted Contel's interpretation of the severance pay provisions based upon its participation in negotiating the collective bargaining agreement and in interpreting and applying that agreement over the course of many years. Although Local 949 concluded that Schmidt's grievance was meritless—in the words of LuVern Stern, "[i]f a man can't fulfill his duties, and can't report to work ... he [is] dismissed for cause"—it initiated a formal grievance on Schmidt's behalf. Schmidt argues that the union's conduct was nonetheless arbitrary because it refused to arbitrate this arguably meritorious grievance. But that is not the law:

> A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit. This is true even if a judge or jury later determines that the grievance is meritorious. *Vaca v. Sipes*, 386 U.S. at 193, 87 S.Ct. at 918. Indeed, because the union's duty of fair representation is a collective duty, owed equally to all members of the bargaining unit, courts have ruled that the union has the affirmative duty not to press grievances which the union believes, in good faith, do not warrant such action.

*Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226, 1229 (8th Cir.1983) (citations omitted). Therefore, we agree with the district court that Local 949's conduct was not arbitrary under *O'Neill* as a matter of law.

However, a union is protected by the "wide range of reasonableness" shield only if it has acted in good faith. Thus, there remains the question whether Local 949 breached its duty by failing to represent Schmidt "without hostility or discrimination" and "with complete good faith and honesty." *Vaca*, 386 U.S. at 177, 87 S.Ct. at 910. To defeat summary judgment on this issue, a plaintiff must offer "evidence of fraud, deceitful action or dishonest conduct" by the union. *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971). Local 949 is not entitled to summary judgment if Schmidt presented "enough evidence of discrimination [or bad faith] by the union to create a genuine issue of material fact." *Carter v. United Food & Commercial Workers, Local 789*, 963 F.2d 1078, 1082 (8th Cir.1992).

Schmidt argues that Local 949 was "tainted and biased" against him because he was seeking both workers' compensation benefits and severance pay. But the union could reasonably conclude that the availability of workers' compensation benefits to injured employees supported Contel's position that severance pay was intended to be limited to layoff situations. Since the interrelationship of the two benefit regimes was relevant to the merits of the grievance dispute, the union officials' comment to Schmidt that "you're going to get enough settlement from workmen's comp" was not, without more, evidence of bad faith or union hostility toward a member it considered guilty of overreaching.

Schmidt further argues that the union's bad faith is evidenced by the fact that, in

---

concern or solicitude, or gave a claim only cursory attention"), *with Hellums v. Quaker Oats, Co.*, 760 F.2d 202, 205 (8th Cir.1985) (perfunctory processing of grievance can be arbitrary conduct only if the product of bad faith or hostility). The Supreme Court has now provided the governing standard in *O'Neill*—perfunctory conduct is actionable only if it is irrational "in light of the factual and legal landscape at the time of the union's actions."

1985, Local 949 pursued a grievance on behalf of another similarly situated employee and settled for $5,000. However, this argument ignores undisputed facts. Local 949 did file the grievance on Schmidt's behalf. When Anderson suggested seeking a $5,000 settlement, Schmidt and Singer advised that such a settlement would be unacceptable. The prior grievance had been settled short of arbitration. Thus, it provides no evidence of bad faith in the decision to terminate Schmidt's grievance which could not be settled without arbitration.

There is some suggestion in the record that Local 949's Anderson may have been annoyed that Schmidt chose to be represented by attorney Singer, as well as by the union. One can also speculate that Local 949 might have been reluctant to push this grievance too aggressively because Schmidt's termination resulted in part from the union's decision not to give him preferential access to the new job proposed in Lindstrom. But there is no probative evidence in the record refuting the testimony of Anderson, Stern, and Contel's witnesses that the company and the union had consistently interpreted the collective bargaining agreement as denying severance pay to employees in Schmidt's situation. In these circumstances, having considered the issue de novo under our well-established standard for review of the grant of summary judgment, *see Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992), we agree with the district court that Schmidt failed to come forward with evidence establishing a genuine issue of material fact as to whether Local 949 acted in an arbitrary or bad faith manner in deciding not to arbitrate Schmidt's grievance.

The judgment of the district court is affirmed.