No. 94-3737

Ira Beavers,                            *
                                        *
    Plaintiff - Appellant,       *
                                        *
    v.                           *  Appeal from the United States
                                        *  District Court for the
United Paperworkers                     *  Eastern District of Arkansas.
International Union,                     *
Local 1741,                             *
                                        *
    Defendant - Appellee.        *

_____

Submitted:  September 13, 1995

Filed:  December 28, 1995
_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

LOKEN, Circuit Judge.

This is an action by Ira Beavers against his former union, the United Paperworkers International Union, Local 1741 ("UPIU"), alleging a breach of UPIU's duty of fair representation because an arbitrator dismissed Beavers's wrongful discharge claim as untimely. The district court granted summary judgment in favor of UPIU, and Beavers appeals. Concluding that UPIU's summary judgment motion does not resolve a disputed issue of fact -- whether UPIU processed Beavers's grievance in an arbitrary manner -- we reverse.

**I.**

In February 1992, UPIU and Georgia-Pacific Corporation entered into a new collective bargaining agreement ("CBA") covering production and maintenance employees at Georgia-Pacific's North

Little Rock plant.  Section XX of the CBA contained the following time limits for processing grievances to arbitration:

1. A written grievance must be presented to Georgia-Pacific's Personnel Manager within five days.

2. "[T]he Personnel Manager will meet with the Union Steward Committee within five (5) days . . . [and] will give a written answer within five (5) days of the meeting."

3. The grievance may be appealed to the Plant Manager "within five (5) days of receipt of the above answer.  The Plant Manager . . . will meet within ten (10) days with the Union Steward Committee . . . and will answer within five (5) days."

4. If the Union is not satisfied, it may refer the grievance to arbitration "within ten (10) days after receipt of the [Plant Manager's] answer."

Georgia-Pacific discharged Beavers on March 9, 1992, giving "[f]alse testimony during the investigation of a 'Sexual Harassment Charge'" as the reason for his discharge.  On March 10, UPIU filed a grievance with the Personnel Manager, who immediately denied it.  On March 11, UPIU appealed to the Plant Manager.  Without meeting with the Union Steward Committee, the Plant Manager denied the grievance that same day.

UPIU held an "arbitration vote" on May 6 and submitted the grievance to arbitration on September 16, long after the ten-day period specified in Section XX of the new CBA.  Following a hearing, the arbitrator denied the grievance "as untimely and non-arbitrable."  In a lengthy opinion, the arbitrator explained that the time limits in a governing collective bargaining agreement are controlling absent contrary prior practice; that there was no prior practice under Section XX of the new CBA; that the Plant Manager advised UPIU's president on March 11 that the grievance was denied; that UPIU's May 6 arbitration vote demonstrated that it considered any failure to meet with the Union Steward Committee "cured"; and

that UPIU's claim that it delayed four additional months before seeking arbitration because it was waiting for Georgia-Pacific to commence arbitration was without merit.  The arbitrator concluded:

> Union has offered no explanation for its more than six-month delay in requesting an arbitration panel in this case.  Absent adequate explanation, the undersigned finds that the matter was untimely when forwarded to arbitration. . . . [S]ince Union clearly failed to adhere to [the time limits in the CBA], I find that I am without authority or jurisdiction to rule on the grievance.

Beavers then commenced this action, seeking damages for breach of UPIU's duty of fair representation.  UPIU moved for summary judgment, submitting in support a two-page affidavit of its president, Larry King.  Mr. King averred:

> Local 1741 maintained that the company failed and refused to follow its past practices for processing grievances to arbitration; specifically, there was no meeting to discuss and try to resolve [Beavers's] grievance prior to requesting a panel of arbitrators.  My interpretation of the contract was that until those meetings took place, requesting an arbitration panel would have been premature.  Furthermore, the company had previously requested the panel only after such meetings with the Union.  An arbitration was conducted on [Beavers's] grievance and [Beavers] fully participated in the hearing.  The arbitration award found the request for arbitration was untimely under the terms of the collective bargaining agreement.

> All my actions with respect to [Beavers] were impartial, nondiscriminatory and were taken in good faith to protect his interests to the best of my abilities as the Union's representative.

Based upon this affidavit, the district court granted summary judgment in favor of UPIU because "[t]he Court is convinced that [UPIU] was guilty of negligence and ineptitude in failing to file the request for arbitration in a timely manner, but the Court does not view that conduct as unreasonable or arbitrary in light of the past practice and custom between [UPIU] and Georgia-Pacific."

-3-

## II.

Because a union enjoys the exclusive right to represent its members in the collective bargaining process, the federal labor laws impose upon the union a duty of fair representation "akin to the duty owed by other fiduciaries to their beneficiaries." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 75 (1991). This duty is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967).

In this case, there is no claim that UPIU discriminated against Beavers, and his conclusory assertion that UPIU acted in bad faith in processing the grievance lacks the evidentiary support necessary to avoid summary judgment. See Schmidt v. Int'l Bhd. of Elec. Workers, Local 949, 980 F.2d 1167, 1170 (8th Cir. 1992) (claim of bad faith requires proof of "fraud, deceitful action or dishonest conduct by the union"). Thus, the issue is whether UPIU "arbitrarily ignore[d] a meritorious grievance or process[ed] it in perfunctory fashion." Vaca, 386 U.S. at 191, quoted in Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979).

A union's conduct is arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a `wide range of reasonableness' as to be irrational." O'Neill, 499 U.S. at 67, quoting Ford Motor Co. v. Huffman, 345 U.S. 330 (1953). As the district court recognized, "mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." United Steelworkers of America v. Rawson, 495 U.S. 362, 372-73 (1990); see NLRB v. American Postal Workers Union, 618 F.2d 1249, 1255 (8th Cir. 1980). Because union representatives are not lawyers, it would be inappropriate to hold them in the grievance-arbitration process to "the demanding tests applied to a trained trial lawyer." Stevens v. Highway, City & Air

<u>Freight Drivers</u>, 794 F.2d 376, 378 (8th Cir. 1986).  Thus, we construe the Supreme Court's reference in <u>Vaca</u> to the "perfunctory" processing of a grievance to mean that "the union acted without concern or solicitude, or gave a claim only cursory attention." <u>Curtis v. United Transp. Union</u>, 700 F.2d 457, 458 (8th Cir. 1983).

UPIU intended to arbitrate Beavers's grievance, but the arbitration was dismissed as untimely.  This same situation was presented in <u>Ethier v. United States Postal Serv.</u>, 590 F.2d 733, 736 (8th Cir.), <u>cert. denied</u>, 444 U.S. 826 (1979).  In <u>Ethier</u>, a new union steward held informal discussions with the employer and then filed a written grievance challenging plaintiff's discharge.  The grievance was one day late, and the arbitrator dismissed it as non-arbitrable.  We affirmed the grant of summary judgment in favor of the union, concluding:

> If Ethier's point of view were adopted, Unions would be subject to claims of unfair representation whenever a grievance was ultimately found not to have been timely filed. . . . Certainly this record does not support an inference that the Union steward here was unconcerned, unsolicitous, or indifferent.  To the contrary, he pursued the grievance with vigor and erred only in failing to anticipate how the Agreement would ultimately be construed by an arbitrator.

590 F.2d at 736.  Thus, if UPIU had missed the ten-day deadline for submitting Beavers's grievance to arbitration because it misconstrued the CBA as first requiring a meeting between the Plant Manager and the Union Steward Committee, or because it believed Georgia-Pacific would commence the arbitration, such a mistake would not constitute arbitrary or perfunctory conduct.

However, the record before us is far more ambiguous.  Here, UPIU did not just miss a ten-day deadline.  It did nothing for nearly two months.  It then submitted Beavers's grievance to a vote of the union members, but it did not submit the grievance to

arbitration for more than four months after the members voted to press the grievance. As the arbitrator noted, the CBA clearly required that the grievance be referred to arbitration within ten days after receipt of the Plant Manager's ruling, and UPIU's six month delay cannot be explained away on the basis of past practice because there was no prior practice with Georgia-Pacific under the new CBA. Moreover, there is no evidence UPIU ever contacted Georgia-Pacific to clarify any uncertainty about how Section XX's rigorous new time limits should be implemented.

Viewing the record in the light most favorable to Beavers, as we must, we conclude that a rational factfinder could find that "the union acted without concern or solicitude, or gave [Beavers's] claim only cursory attention." Therefore, Beavers's claim of breach of the duty of fair representation raises a genuine issue of material fact precluding summary judgment in favor of UPIU. Of course, even if Beavers proves that UPIU breached its duty of fair representation, "damages attributable solely to the employer's breach of contract should not be charged to the union." Vaca, 386 U.S. at 197. Moreover, for this type of alleged breach of duty, Beavers's claims for punitive damages and for mental and emotional distress damages are precluded. See Foust, 442 U.S. at 52 (1979); Anderson v. United Paperworkers Int'l Union, 641 F.2d 574, 581 n.9 (8th Cir. 1981); Richardson v. Communications Workers of America, 443 F.2d 974, 982 (8th Cir. 1971). Accord Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021, 32 F.3d 465, 468-69 (10th Cir. 1994).

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-