# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-3491

_____

Aaron Gaston; Earl Rudy; Joe Ahlvers;    *
William Wehmeyer; Robert Patton;    *
Richard Pickering; Joseph Palozzola;    *
Stanley Songer; Jeffrey C. Elliott; John    *
Haas; Mark Kammer; Michael    *
Williams; Deborah Rehm; James T.    *
Miller; Phillip Hite; James Bean;    *
Robert Cagle; Wanda Hite; William    *
Dunphy; Oliver Dowden; Dean Riefle;    *
Keith Ringkamp; Kenny Gravot; Aaron    *
Epps; Jarrod Brazzill; Mark Johnson;    *   Appeal from the United States
Richard Tracy; Patricia Sutton; Anne    *   District Court for the
Chandler; Steven Rakey; Paul Martin;    *   Eastern District of Missouri.
Gary Sutton; Wayne Stallings; Terri    *
Roedel; Richard J. Diggs; Merlyn Hill;    *
Ledee Deele; Roger Nash; Brennade    *
Harold; Audrey Phifer; Rodney    *
Bowden; Darren Streater; Mark Dixon;    *
Chris Bunch; Chester Johnson; George    *
Schuetz; Timothy Howard; Allan    *
Courtney; Richard Tolin; Walter    *
Mason; Clarence Jones; Ava Carr;    *
Gerard Winkler; Michael Fink; Richard    *
Carr; Raymond Gurley, Jr.; Jamie    *
Borden; David White; Donald Halbert;    *
Frederick Ivy; Arthur Woolfolk;    *
Michael Edwards; Rubin Draine,    *
   *
        Plaintiffs - Appellants,    *
   *
        v.    *

Teamsters Local 600, International                    *
Brotherhood of Teamsters, Chauffeurs,                *
Warehousemen and Helpers of                          *
America; A.B.C. Dairy Company, a                      *
Missouri corporation, doing business as              *
Pevely Dairy Company; Prairie Farms,                 *
Inc., an Illinois corporation; Scott                 *
Gilchrist,                                           *
                                                     *
       Defendants - Appellees.        *

_____

Submitted: June 16, 2010
Filed: August 2, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Former workers at the Pevely Dairy sued their employer and its owner (collectively Prairie Farms) and their union, Local 600 of the International Brotherhood of Teamsters (Local 600), and its business agent Scott Gilchrist. The employees allege that Prairie Farms breached their collective bargaining agreement (CBA), that Local 600 breached its duty of fair representation under the Labor Management Relations Act (LMRA), and that Gilchrist breached his fiduciary duty under the Labor Management Reporting and Disclosure Act (LMRDA). The district court[1] granted summary judgment to Prairie Farms, Local 600, and Gilchrist. The former Pevely employees appeal. We affirm.

_____

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

Prairie Farms[2] owned and operated Pevely Dairy in St. Louis, Missouri, until it closed on October 31, 2008. On its closure Prairie Farms transferred some of the Pevely employees to Mid-States Dairy which it had purchased in June 2007. Employees of both plants are represented by Local 600 and Gilchrist. Gilchrist's duties include negotiating with Prairie Farms on behalf of both Pevely and Mid-States employees.

Employment at Pevely Dairy was governed by the same CBA under which Mid-States employees still work: the Central States Master Dairy Agreement (MDA). The MDA is a multi union, multi employer agreement which governs approximately fifty plants in the Midwest. Each of these plants also has a local addendum negotiated by the employer and the local union for the particular business operation. The agreement between Local 600 and Pevely Dairy governs only Pevely employees, and we refer to it as the Pevely Addendum.

Two sections of the MDA have special importance for the issues before the court. Section 10.4 of the MDA governs employee transfers upon plant closures. It provides that "employees may exercise their right to transfer in accordance with their seniority, but shall go to the bottom of the seniority list at the new location." Section 21.1 determines the effect of conflicting local addenda. It provides in part:

> The provisions of this Master Agreement shall take precedence over any conflicting or inconsistent provision of any Addendum and the parties shall not be bound by any provisions in an Addendum dealing with a subject dealt with in this Master Agreement. . .

The Pevely Addendum was set to expire in July of 2007 and was undergoing renegotiation when Prairie Farms announced that the Pevely Dairy would close in 2008 and that some of its employees would be transferred to Mid-States Dairy. The

---

[2]Prairie Farms owns A.B.C. Dairy, d/b/a Pevely Dairy Company.

-3-

Pevely Addendum to the MDA was at that point silent on seniority rights of transferred employees. Under § 10.4 of the MDA, however, the transferred Pevely employees were to be placed at the bottom of the Mid-States seniority list, a process known as "endtailing." The employees assigned for transfer wanted to preserve the seniority they had had at Pevely Dairy instead and hoped to be slotted into the Mid-States seniority list, a process known as "dovetailing."

Appellant Aaron Gaston, who was also on the bargaining committee, asked Gilchrist if dovetailed seniority could be achieved by negotiating it into the Pevely Addendum. Appellants claim that Gilchrist told them that it could not be done, but he says that he explained to them that any dovetailing provision would be rendered ineffective by § 21.1 of the MDA and that Prairie Farms would not agree to dovetailing because it had already announced it would endtail the transferees. The parties agree that a union representative spoke with Prairie Farms about dovetailing, but disagree as to whether it occurred during a formal bargaining session.

Before their transfer to Mid-States, several Pevely employees filed grievances seeking to be dovetailed into the Mid-States seniority list upon their transfer. Prairie Farms denied the grievances and the dispute proceeded to a hearing by the joint areas committee (JAC), the dispute resolution body provided by the MDA. The JAC denied the grievances. Prairie Farms then submitted an offer to Local 600 for a renewed Pevely Addendum without a dovetailing provision. Local 600 accepted the offer in December 2007. When the Pevely plant was closed in October 2008, the transferred employees were endtailed into the Mid-States seniority list.

After exhausting their administrative remedies, former Pevely employees commenced this action in district court in December 2008. They alleged breach of fair representation by Local 600 under the LMRA, 29 U.S.C. §151 *et seq.*, and breach of fiduciary duty by Gilchrist under the LMRDA, 29 U.S.C. §501 *et seq.*

The district court granted summary judgment to all defendants, concluding that the MDA could not be modified by any dovetailing addendum for Pevely employees and that Prairie Farms had not violated the MDA. The employees appeal only the summary judgment in favor of Local 600 and Gilchrist.

We review de novo a district court's grant of summary judgment, viewing all facts and making all reasonable inferences in the light most favorable to the nonmoving party. Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 471 (8th Cir. 2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

Appellants first claim that Local 600, as represented by Gilchrist, breached its duty of fair representation under the LMRA. 29 U.S.C. § 151 *et seq.* A union has exclusive bargaining rights under a CBA, and federal law places a duty on it to represent fairly all the workers covered by such an agreement. Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226, 1229 (8th Cir. 1983). The duty of fair representation is breached if the union's conduct is "arbitrary, discriminatory, or in bad faith." Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068 (8th Cir. 1996) (citing Vaca v. Sipes, 386 U.S. 171, 190 (1967)).

Mere negligence, poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation. Id. For a union's conduct to be arbitrary it must be "so far outside a 'wide range of reasonableness' as to be irrational." Washington v. Serv. Employees Int'l Union Local 50, 130 F.3d 825, 826 (8th Cir. 1997) (citing Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068 (8th Cir. 1996)). A showing of bad faith requires proof of "fraud, deceitful action, or dishonest conduct." Id. Unions are afforded considerable deference in executing their duty of fair representation. Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 78 (1991).

Appellants also claim that Gilchrist breached his fiduciary duty. The LMRDA provides that union representatives must refrain from acting adversely to the union and from "holding or acquiring any personal interests" conflicting with its interests. 29 U.S.C. § 501(a). We interpret the LMRDA broadly. See Johnson v. Nelson, 325 F.2d 646, 650 (8th Cir. 1963) ("Being trustees [union] officers must subvert their own personal interests to the lawful mandates and orders of the organization.").

The claims by the transferred workers arise from the same alleged conduct by Gilchrist. Gilchrist had previously been a driver for Mid-States Dairy and remains on its seniority list, classified as having a leave of absence. Appellants claim that Gilchrist failed to negotiate dovetailing into the Pevely Addendum in order to protect his own interests and those of other Mid-States employees. Instead, according to appellants, Gilchrist wrongfully advised them to file a grievance regarding their seniority rights that was unlikely to succeed.

It is undisputed that Gilchrist stood to lose some seniority at Mid-States if seniority were to be dovetailed for Pevely employees. The parties dispute the extent of his resulting loss of seniority, however, and whether his friendships with Mid-States employees affected his decision making. According to appellants, Gilchrist's conduct breached Local 600's duty of fair representation and his fiduciary duty.

When the terms of a CBA are unambiguous, they are to be "enforced strictly." See Contempo Design, Inc. v. Chi. & Ne. Ill. Dist. Council of Carpenters, 226 F.3d 535, 546 (7th Cir. 2000) (en banc); see also Vaca v. Sipes, 386 U.S. 171, 184–85 (1967). Section 10.4 of the MDA makes clear that when a facility is closed, transferred employees "shall go to the bottom of the seniority list at the new location." For the employees to prove a breach of the duty of fair representation or breach of fiduciary duty, they would need to establish that § 10.4 of the MDA could be amended by the Pevely Addendum to allow dovetailing of seniority.

Section 21.1 of the MDA states that provisions of the MDA "take precedence over any conflicting provision of any Addendum and the parties shall not be bound by any provision in an Addendum dealing with a subject dealt with in the MDA." Dovetailing language in the Pevely Addendum would not have been binding on the parties because it would have conflicted directly with § 10.4 of the MDA which mandates endtailing for transferred employees. Therefore, even if Gilchrist had successfully negotiated for dovetailing of seniority in the Pevely Addendum, § 21.1 would still have controlled the seniority rights of the Pevely employees.

Moreover, the Pevely Addendum does not bind Mid-States employees. Once transferred to Mid-States, appellants were bound only by the Mid-States Addendum which was not up for negotiation. Even if the Mid-States Addendum had been subject to renegotiation, Gilchrist would then have had a duty to represent the best interests of all Mid-States employees, not just the Pevely transferees. Subjecting Mid-States employees to the Pevely Addendum would have violated the plain language of their CBA and made them subject to the results of negotiations in which they were not a party. Local 600 and Gilchrist could not be expected to negotiate for an addendum that would directly violate the MDA and the rights of other employees under the MDA. Nothing in the LMRDA or LMRA requires a union agent to attempt to amend a CBA to take action that infringes on the rights of an employee group or to engage in futile actions.

As evidence that the Pevely Addendum could have included a dovetailing provision, the employees cite a November 2008 letter of understanding. Letters of understanding govern specific terms of employment at a specific plant and are entered into by local unions and individual dairy plants. In November 2008, eleven months after the new Pevely Addendum was signed, Local 600 and Mid-States Dairy entered into a letter of understanding placing a temporary moratorium on job bidding, even though § 5.1 of the MDA provides that job vacancies shall open immediately for bidding. This letter of understanding, signed by Gilchrist, contravened the MDA.

According to appellants, the November 2008 letter of understanding is evidence that the MDA can be amended and that Gilchrist was aware of this at the time of the Pevely Addendum negotiations. Record evidence shows, however, that letters of understanding are only used to define specific plant procedures. They do not outline business practices at every other plant covered by the MDA. Although the November 2008 letter of understanding between Mid-States and its employees is inconsistent with § 5.1 of the MDA, it is readily distinguishable from the dovetailing provision the employees sought. That letter of understanding was agreed to by all the parties it affected. It created only a short term change in job bidding and was to the mutual benefit of the parties involved. It did not affect any other plants or employees under the MDA, and any inconsistencies with the MDA were temporary.

The provision advocated by appellants, by contrast, would have created permanent changes in direct conflict with § 10.4 of the MDA. Dovetailing seniority would have harmed the interests of Mid-States employees, whose contractual rights under the MDA would have been undermined by an agreement to which they were not a party. The plain language of § 21.1 of the MDA addresses such direct conflicts and only binds parties to the provisions in the MDA. To dovetail transferred employees would have been a permanent change affecting other plants and employees. Moreover, the November 2008 letter of understanding was signed eleven months after the events giving rise to this lawsuit. Gilchrist could not have known then that almost a year later Mid-States Dairy would completely agree on a letter of understanding inconsistent with the language of the MDA.

Accordingly, the judgment of the district court is affirmed.

_____