# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3734

_____

Charles Inechien, individually and on behalf of others similarly situated

*Plaintiff - Appellant*

v.

Nichols Aluminum, LLC; International Brotherhood of Teamsters Union, Local No. 371

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: June 26, 2013
Filed: August 28, 2013

_____

Before RILEY, Chief Judge, MELLOY and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Plaintiff Charles Inechien[1] sued his employer, Nichols Aluminum, LLC ("Nichols"), for breach of the Collective Bargaining Agreement ("CBA") and sued his union, the International Brotherhood of Teamsters Union, Local No. 371 ("Union"), for breach of its duty of fair representation. The district court[2] certified the case as a class action and granted summary judgment in favor of the Defendants. Plaintiff appeals, and we affirm.

## I. Background

Nichols manufactures aluminum sheets at two facilities in Iowa. At the Nichols Aluminum Casting Facility, the aluminum is melted and formed into a sheet, which is then rolled onto a large coil. At the Nichols Aluminum Davenport Facility, the aluminum is finished to a customer's specifications. Three of Nichols' production lines (the coil coating line, the casting line, and the hot mill line) are continuously operating lines, which means they operate at all times without stopping. These particular lines operate continuously because shutting them down at any point would be inefficient, as well as detrimental to productivity and safety.

Charles Inechien started working at Nichols in 1976, and he began to work on the coil coating line in 2009. In January 2010, Charles Inechien first complained to his supervisor and the Union president that the employees on the coil coating line

---

[1]We note Plaintiff-Appellant's name was spelled "Ineichen" in his own briefing on appeal. In the court below, as well as on the appellate docket, the name is spelled "Inechien." We will use the name on this docket, acknowledging this may be a misspelling.

[2]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

were not receiving breaks. On August 26, 2010, he filed a grievance on this issue, stating that "employees on the coil coating line are not getting rest breaks . . . in accordance with the current contract." Joint Appendix ("J.A.") at 463. The provision of the CBA relevant to Charles Inechien's grievance, and at issue in this case, is the provision entitled "Rest Periods." In particular, the CBA provides for "rest periods" as follows:

> 17.1(a) No employee shall cease work or leave his place of work during working hours except in case of physical necessity, without first securing permission to do so from his foreman, except that there shall be two (2) ten (10) minute rest periods for employees on each shift. The time this rest period will occur will be established for each department by the Company. Except on continuous operations, five (5) minutes wash up time will also be granted employees at the end of each shift, however, no employee will leave his work station until the completion of the shift.[3]

J.A. at 254. In his grievance, Charles Inechien requested that rest breaks "be established for [the coil coating line] as per the contract, as has been done for all other Departments." Id. at 463.

Nichols responded to his grievance, stating that "[e]mployees in the Coil Coating department do get to take their rest periods," and they do so "as time permits." Id. at 467. Charles Inechien believed this response did not resolve the matter, and a grievance hearing was held on November 23, 2010. At the conclusion of the hearing, which Charles Inechien and representatives of both Nichols and the Union attended, the grievance was denied. The Union did not request arbitration.

_____

[3]The Union has been the collective bargaining representative for the employees at both of Nichols' plants since the 1940s. Nichols and the Union have entered several collective bargaining agreements over the years, but the provision in the agreement that is at the heart of this matter has remained unchanged during all times relevant to this case.

Charles Inechien asserts he did not receive notice that his grievance had been denied. Instead, he initially believed, erroneously as it turned out, that his grievance had been resolved in his favor.

On January 26, 2011, Charles Inechien filed another grievance, stating that he left the November 2010 grievance meeting "thinking that there would be changes." J.A. at 465. Specifically, Inechien said he thought the workers "would be notified regarding breaks and lunch periods." Id. Nichols refused to accept the grievance, stating it considered the matter closed. Nichols further stated it had received no other information to suggest the issue of breaks was a problem and reminded Charles Inechien that, during the meeting, he had been "directed how to go about taking" his breaks. Id. at 466. Charles Inechien then filed this class action suit, alleging Nichols breached the CBA by failing to establish rest periods for workers on the continuously operating lines as required by Section 17.1 of the CBA and against the Union for breach of the duty of fair representation. The district court certified the class, pursuant to Federal Rule of Civil Procedure 23, as those Nichols employees employed on or after August 26, 2010, who worked on continuously operating lines at any time during the ten-year period preceding the filing of the lawsuit.

## II. Discussion

We review de novo the grant of a motion for summary judgment, viewing all evidence and making all reasonable inferences in the light most favorable to the non-moving party. Williamson v. Hartford Life & Acc. Ins. Co., 716 F.3d 1151, 1153 (8th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In this case, Charles Inechien filed a "hybrid" action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2012). To prevail in such

an action, Inechien and the class he represents must prove both that Nichols, the employer, violated the CBA and that the Union breached its duty of fair representation. Jones v. United Parcel Serv., Inc., 461 F.3d 982, 994 (8th Cir. 2006) (citing Vaca v. Sipes, 386 U.S. 171, 186–87 (1967); Waldron v. Boeing Co., 388 F.3d 591, 594 (8th Cir. 2004)).  We begin with the Union's duty of fair representation.

"A union breaches its duty of fair representation when its conduct is 'arbitrary, discriminatory, or in bad faith.'"  Washington v. Serv. Emps. Int'l Union, Local 50, 130 F.3d 825, 826 (8th Cir. 1998) (citing Vaca, 386 U.S. at 190).  An arbitrary decision is one that is "so far outside a wide range of reasonableness as to be irrational."  Id. (quotation omitted).  In order to sustain a finding of bad faith, proof of "'fraud, deceitful action, or dishonest conduct'" is required.  Gaston v. Teamsters Local 600, Int'l Bhd. of Teamsters, Chaffeurs, Warehousemen & Helpers of Am., 614 F.3d 774, 778 (8th Cir. 2010) (quoting Washington, 130 F.3d at 826).  Unions are granted substantial deference in the execution of their duty of fair representation. Id. (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991)).

Charles Inechien asserts the Union acted arbitrarily and breached its duty of fair representation when it failed to conduct an investigation into the merits of his grievance and failed to process his grievance properly.  He complains the Union did not investigate whether employees on the coil coating line, or any other continuously operating line, were able to take their contractually guaranteed rest periods. This may be true.  While union representatives stated they had interviewed employees on continuously operating lines who told them they had no trouble taking their rest breaks, Charles Inechien presented evidence from the employees themselves that no such interviews took place.  As a result, we agree with the district court that there remains a disputed issue of fact regarding whether the Union acted arbitrarily or in bad faith when, based on an investigation that may or may not have taken place, it failed to arbitrate the grievance that coil coating line employees were not *actually receiving* their rest periods.

-5-

Whether or not employees on a continuously operating line were receiving their rest periods, however, was not the basis for certifying the class in this case. Instead, as the district court made clear, the claim in this class action lawsuit was that Nichols failed to establish *scheduled* rest breaks for employees on the continuously operating lines, as required by the CBA, and that, in turn, the Union failed in its duty of fair representation when it refused to take this claim to arbitration. In the order granting Charles Inechien's motion to certify the class, the district court expressly stated:

> Mr. Inechien is not claiming employees were actually deprived of taking rest breaks. Mr. Inechien's claim is that the Union breached its duty of fair representation by allegedly failing to enforce the class members' right to *scheduled* rest periods . . . .

Rul. & Order on Mot. for Class Cert. at 14–15, No. 3:11-cv-00032, ECF No. 52 (emphasis original). Any purported failure to investigate individual claims by individual class members is not relevant to our analysis on appeal.[4]

As for the portion of the grievance alleging that Nichols had breached the CBA by failing to establish scheduled rest periods for workers on continuously operating lines, the Union had several reasons to believe that arbitration of this issue would not prove successful. First, the Union, which has been the sole representative of Nichols employees since the late 1940s, understood what the rest period practice had been for workers on the continuously operating lines. That practice was for these workers to take their breaks as time permitted, which was usually during idle or down time. Charles Inechien points to testimony from workers who state that there are times

---

[4]We also note that, when granting Defendants' motions for summary judgment, the district court specifically stated: "It should be understood that the summary judgment rulings are without prejudice to the right of class members to individually pursue claims that they have not received rest periods." Rul. on Def.'s Mot. for Sum. Judg. at 4, No. 3:11-cv-00032, ECF No. 111. We take no position on the merits of such claims as they are not before us.

when they are not able to take their breaks or to take leave of their responsibilities altogether during a break, suggesting a genuine dispute over a material issue of fact. Yet, none of the workers Charles Inechien identifies disputed the existence of the longstanding method for taking ad hoc breaks on continuously operating lines. Charles Inechien and others stated they *wanted* a scheduled rest break "as has been done for all other Departments." J.A. at 469. While these workers may have wanted a change in the procedure for taking rest breaks, they did not provide any evidence that workers on the continuously operating lines had *ever* taken breaks on other than an ad hoc basis.

Second, the Union had previously addressed a grievance on the issue of a lack of scheduled breaks on the continuously operating lines at Nichols. In 1990, a Nichols worker on a continuously operating line filed a grievance about the lack of scheduled rest periods. Nichols responded by stating that, for most workers on continuously operating lines, breaks are not scheduled. Instead, workers are "allowed break time without disrupting production," such as "during roll and paint changes." Id. at 472. The response specifically explained that the continuously operating line simply could not be shut down for a "scheduled" break. The Union did not take the matter to arbitration.

Third, the Union had negotiated a possible change to the CBA's rest period provision a year later, in 1991. At that time, the Union proposed amending the rest period provision to allow for twenty-minute, rather than ten-minute, rest periods, which would be taken "each four (4) hours of the employee's shift." Id. at 482. Nichols and the Union discussed the impracticality of designating specific times for scheduled rest periods on the continuously operating lines, and the proposal was ultimately abandoned. The Union decided not to pursue the matter further, and the language of the rest period provision remained unchanged. In short, when the Union faced this issue in the past, it proposed changing the language of the rest period provision, rather than asserting a violation of the CBA as it was currently written.

Given the undisputed longstanding practice at Nichols, and the previous experience with this very issue of scheduled rest breaks for employees on the continuously operating lines, the Union's decision not to take this particular issue to arbitration was not arbitrary.[5]

Charles Inechien also asserts the Union acted in bad faith by failing to communicate openly and honestly with him about the investigation and the grievance process. "[A] union is protected by the 'wide range of reasonableness' shield only if it has acted in good faith." Schmidt v. Int'l Bhd. of Elec. Workers, Local 949, 980 F.2d 1167, 1170 (8th Cir. 1992). As the district court noted, Charles Inechien's grievance process did have "a fitful start and an uncertain course." Mem. Concerning Cross-Mot. for Sum. Judg. at 25, No. 3:11-cv-00032, ECF No. 112. Charles Inechien has failed, however, to show that the Union acted in bad faith as to the issue certified for the class. As discussed earlier, the Union may (or may not) have been less than honest about the nature or extent of its investigation into the claim that individual employees were not able to take their rest breaks. The same cannot be said regarding Charles Inechien's claim that Nichols breached the CBA on the issue of *scheduled* rest breaks. This issue did not require the same type of investigation in order to assess its validity and viability for arbitration. Even if the Union could have handled the matter more professionally, or more to Charles Inechien's liking, we note that "[m]ere negligence, poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." Gaston, 614 F.3d at 778 (citation omitted).

---

[5]Charles Inechien also asserts the Union acted arbitrarily by failing to follow proper procedure when processing his grievance. The procedure he claims the Union failed to follow, however, is largely the same issue raised regarding the failure to investigate, or present available evidence, during the grievance process. As such, we conclude these assertions relate to the issue of whether individuals on continuously operating lines were receiving their individual breaks, not to whether Nichols breached the CBA by failing to establish scheduled rest breaks for these workers.

A union's duty of fair representation is a collective duty, and it is owed equally to all members of the union. Id. (citing Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226, 1229 (8th Cir. 1983)). In this case, the Union had a duty not to pursue a grievance to arbitration that it believed did not warrant such action. Id. Under the facts and circumstances of this case, Charles Inechien has not raised a genuine issue of material fact on whether the Union failed in its duty of fair representation on the issue before the court. Because summary judgment in favor of the Union was properly granted, summary judgment in favor of the employer, Nichols, was also proper. Scott v. United Auto., 242 F.3d 837, 840 (8th Cir. 2001). Accordingly, we affirm the judgment of the district court.

### III. Conclusion

For the reasons stated above, we affirm the district court.

_____